# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**MARY EARNESTINE DAVIS,**                                                         **PLAINTIFF,**

**VS.**                                                          **CIVIL ACTION NO. 2:03CV335-P-A**

**BL DEVELOPMENT CORP.,**                                                    **DEFENDANT.**

## MEMORANDUM OPINION

These matters come before the court upon Defendant's Motion for Summary Judgment [31-1] and Plaintiff's Motion for Partial Summary Judgment [35-1]. Upon due consideration of the motions and the responses filed thereto, the court is prepared to rule.

## I. FACTUAL BACKGROUND

Mary Earnestine Davis was employed by Defendant BL Development Corp.'s Grand Casino in Tunica, Mississippi on June 11, 1996. In 1999, Davis was promoted to slot supervisor.

On January 30, 2003, Davis participated in a supervisors' meeting held for the purpose of allowing the slot department supervisors to discuss their concerns regarding the department. Not only were supervisors present, but there were also other employees present, including Kathey Blakely, Administrative Assistant to the Director of the Slot Department. During the meeting Davis asked Jerry Artiglere, VP of Slot Operations, in the presence of Blakely, what position Blakely held. Davis inquired because she wanted to know if Blakely had received a promotion and whether Blakely had authority to tell supervisors how they should do their job. Davis alleges that it was confirmed in the meeting that Blakely was "just a secretary for the department," thereby conferring upon Blakely no authority to correct supervisors. Davis also avers that this exchange angered Blakely and she "really flew off the handle. She started going off."

1

Though Davis admits that she never heard any inappropriate statements made by Blakely during the meeting, Davis alleges that Deborah Allen, another slot supervisor who had attended the meeting, stopped a group of supervisors, including Davis, and told them that Blakely had called Davis a "black bitch." Davis states that during the following night she talked with her immediate supervisor, Clinton Blayde, about what happened and told him that she needed to talk to someone about it. According to Davis, Blayde told her to report the incident to the legal department.

Davis contacted the Grand Casino legal department which informed her an investigation would commence. Davis faxed to the legal department copies of voluntary statements from the supervisors who heard Deborah Allen's alleged report of the comment made by Blakely – namely, Felicia Jackson, Ella Poole, and Merlita Presley. The legal department thereafter referred the investigation to the human resources department. Amy Hughes, an associate in the HR department, conducted the investigation.

Hughes was unable to confirm that the "black bitch" comment had been made by Blakely after Deborah Allen, when questioned by Hughes, denied either hearing the statement or repeating it. Allen was the only person who Davis alleges heard the comment. Allen stated in her voluntary statement made during Hughes's investigation that Blakely "was upset but she did not say anything to [Davis]." In her voluntary statement that Davis faxed to the legal department, Felicia Jackson stated that Blakely "said the word bitch." However, Jackson told Hughes during the HR investigation that she did not hear Blakely say the word "bitch." Rather, Jackson read Blakely's lips and thought she saw Blakely say the word. Merlita Presley and Ella Poole indicated in their statements that they did not hear Blakely say "bitch" or "black bitch." Presley

also indicated that during the meeting, Jackson wrote on a piece of paper that Blakely said the word "bitch."

Hughes obtained several statements from other individuals who attended the supervisors' meeting. No one told Hughes that Blakely said anything inappropriate. Jerry Artiglere, VP of Slot Operations, and Gary Bisbee, Director of Slot Operations, were present during the meeting and both stated that Blakely made no offensive comment to Davis.

It is undisputed that after the HR department completed its investigation, it recommended that Davis be terminated for instigating an investigation based on false accusations. Jerry Artiglere, VP of Slot Operations, received the recommendation and ultimately decided to terminate Davis for making false accusations and for unsatisfactory performance arising from her filing false accusations, both in this instance and in two prior instances. Grand Casino's Employee Handbook states that "Grand recognizes that false allegations of harassment and/or discrimination can have serious effects. Such actions may also result in disciplinary action up to and including termination."

Davis filed charges of harassment on two prior occasions. Once she filed charges against her two supervisors, Rhonda Kennedy and Jimmy Miller. After investigation, the HR department found Davis's claims to be unwarranted. Years earlier, Davis complained about events that took place during a training meeting. Rhonda Kennedy took voluntary statements from some of the people present at the meeting and determined that Davis should be written up for poor job performance. Davis was suspended one day with pay. Davis then complained to Collin Wingate who upheld the suspension.

After her termination, Davis filed a request for a Board of Review. The Board upheld her

termination after conducting a hearing. Essentially, Davis alleges that she was terminated for taking her complaint directly to the legal department rather than following her chain of command. She says this is related to race because Blakely is white and she is black. The defendant denies that it terminated Davis for complaining to the legal department.

After receiving a right to sue letter from the EEOC on July 18, 2003, Davis filed the instant complaint *pro se* on October 15, 2003 claiming racial discrimination and retaliation under Title VII as well as under Mississippi law. During discovery, Davis retained an attorney.

On January 20, 2005, the defendant filed the instant motion for summary judgment in which it argues that: (1) Davis cannot establish a prima facie case of race discrimination because (a) she cannot show that she was replaced by someone outside of her class given that one of the two slot supervisors hired to replace Davis was also black, and, of eight total slot supervisors, five are black; (b) she cannot establish that her race was a substantial factor in her termination since she believes she was terminated for going to the legal department with her claim instead of using the chain of command and since the person who allegedly made the racial slur, not actually heard by Davis, was merely a co-worker who had no authority over Davis; (2) even if Davis could establish a prima facie case, the defendant can demonstrate a legitimate, nondiscriminatory reason for terminating Davis – namely, the unsatisfactory performance arising from her history of filing unsupported complaints; (3) Davis cannot establish, nor has she alleged, that the reasons given for her termination (filing false accusations) were a pretext for Grand Casino to racially discriminate against her; (4) Davis's claim for retaliatory discharge fails because she cannot show that she was terminated for opposing practices made unlawful by Title VII – her claim that she was retaliated against for filing a complaint with the legal department rather than following her

chain of command does not involve activity made unlawful by Title VII; and (5) Davis's claims under Mississippi law fail because there are no Mississippi laws analogous to the provisions of Title VII applicable in this case.[1]

On January 21, 2005, the plaintiff filed the instant motion for partial summary judgment regarding her retaliation claim. In said motion, the plaintiff argues that she was terminated, in violation of Title VII's anti-retaliation provision, for exercising her right to oppose what she believed was a racial slur directed against her by a co-worker by complaining to the legal department on the advice of her immediate supervisor. Davis points out that protection of Title VII is extended to employees who use internal or even informal means of attempting to redress discrimination in the workplace. Furthermore, Davis asserts that she acted in reasonable belief that the activity complained of (the racial slur) was in violation of Title VII even if the activity was not, in fact, violative of Title VII.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in

---

[1] Since the plaintiff appears to have abandoned her claims under Mississippi law, and given that the court agrees with the defendant's appraisal of them, the court concludes that said claims are without merit and should be dismissed with prejudice without further comment.

5

other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (l986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56©) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, *supra*, at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, *supra*, at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d l026, l03l (5 Cir. l982); *Environmental Defense Fund v. Marsh*, 65l F.2d 983, 99l (5 Cir. l98l); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d l2ll, l2l3 (5 Cir. l969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, *supra*, at 324.

6

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, *supra* at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id.*, at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id.*, at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978); *Schuchart & Associates v. Solo Serve Corp.*, 540 F.Supp. 928, 939 (WD Tex. 1982).

**B. Title VII Race Discrimination**

Title VII prohibits discrimination based on race. 42 U.S.C. § 2000e-2(a). "Title VII discrimination can be established through either direct or circumstantial evidence" and when a case is based on circumstantial evidence, the court should look to the *McDonnell Douglas* test. *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

"Under this framework, the plaintiff must first create a presumption of discrimination by making out a prima facie case of discrimination." *Laxton*, 333 F.3d at 578. (internal citations omitted). A prima facie case of race discrimination requires proof from the plaintiff that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action because of her race; and (4) she was replaced by someone outside the protected group. *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). It is undisputed that Davis belongs to a protected class. It is also undisputed that she was qualified for her position as a slot

7

supervisor. The problem lies, however, in the other two elements.

Even viewing the facts in a light most favorable to Davis as the non-movant with respect to the defendant's motion for summary judgment, Davis has provided no evidence that she was terminated because of her race. Indeed, she has admitted that she believes she was terminated for lodging a complaint to Grand Casino's legal department rather than using her chain of command. Of course, this is a puzzling assertion given that Davis avers she asked her immediate supervisor, Clinton Blayde, what she could do regarding the alleged racial slur and that Blayde told her to go to the legal department. This is a clear use of the chain of command. Nevertheless, though the plaintiff disbelieves the proffered reason for her termination – *i.e.*, filing false accusations – she has advanced no argument that she believes that Grand Casino's management terminated her because of her race.

With regard to the prima facie requirement that the plaintiff needs to have been replaced by someone outside the protected group, the plaintiff does not dispute that after she was fired, two people were hired as slot supervisors in her place: one black and one white. Neither does she dispute that of eight total slot supervisors, five of them are black. Likewise, Davis's argument that she was treated differently than others similarly situated is without merit. Blakely, the administrative assistant who allegedly called Davis a "black bitch," was a subordinate to Davis and was not similarly situated. Furthermore, Davis has proffered no evidence that anyone actually heard Blakely use the term "black bitch," other than Deborah Allen's recanted statement.

The court concludes that Davis cannot demonstrate a prima facie case of race discrimination.

Even if it were determined that Davis could demonstrate a prima facie case of race

discrimination, the defendant has met its burden in the second stage of the *McDonnell Douglas* test because it has proffered a legitimate, nondiscriminatory reason for her termination: Davis was terminated for filing false accusations both in the Blakely situation and in the past. Since the employer has met its burden in producing a legitimate, nondiscriminatory reason for the adverse employment action, the presumption of discrimination dissipates. *Laxton*, 333 F.3d at 578.

The third stage of the *McDonnell Douglas* test requires that "[t]he plaintiff ... bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status." *Laxton*, 333 F.3d at 578. (internal citations omitted). The court in *Laxton* instructs:

> To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. The plaintiff must rebut each nondiscriminatory reason articulated by the employer. A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence." An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive. No further evidence of discriminatory animus is required because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation...." ... The "rare" instances in which a showing of pretext is insufficient to establish discrimination are (1) when the record conclusively reveals some other, nondiscriminatory reason for the employer's decision, or (2) when the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and uncontroverted evidence that no discrimination occurred. A decision as to whether judgment as a matter of law is appropriate ultimately turns on " 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.' "

*Laxton*, 333 F.3d at 578-579. (internal citations omitted).

Davis has produced insufficient evidence to prove by a preponderance of the evidence that her employer discriminated against her because of her race.

Although the theory has not been developed in this case, the plaintiff has also not demonstrated a genuine issue of material fact that she was victim of hostile work environment race discrimination *vis-a-vis* Blakely's alleged "black bitch" comment – again, a comment never actually heard by the plaintiff and a comment that no one other than Deborah Allen ever heard. For such harassment "to affect a 'term, condition, or privilege of employment' it must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Celestine v. Petroleos De Venezuela S.A.*, 266 F.3d 343, 353 (5th Cir. 2001). The plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). Furthermore, "[f]or a comment in the workplace to provide sufficient evidence for discrimination, it must be '(1) related [to the protected class of persons of which plaintiff is a member]; (2) proximate in time to the termination; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Trotter v. BPB America, Inc.*, 106 Fed.Appx. 272, 275 (5th Cir. 2004) (quoting *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999)). It is undisputed that Blakely was not an individual with authority over the employment decision at issue. Nor does the record reflect that the alleged comment was related to the employment decision at issue in the sense that the comment did not reveal racial animus leading to termination.

For the reasons discussed above, the court concludes that the defendant's motion for summary judgment with respect to the plaintiff's Title VII claim for race discrimination should

be granted because there is no genuine issue of material fact necessitating a trial on said claim.

## C. Title VII Retaliation

The elements of a Title VII retaliation claim are: "(1) the plaintiff participated in statutorily protected activity; (2) [s]he received an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action." *Soledad v. U.S. Department of Treasury*, 304 F.3d 500, 506-507 (5th Cir. 2002). A "plaintiff's use of her employer's internal administrative process to file an employment discrimination complaint 'is clearly protected activity' for purposes of a Title VII retaliation claim." *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 194 (5th Cir. 2001) (citing *Dollis v. Rubin*, 77 F.3d 777 (5th Cir. 1995)).

When an employee establishes a prima facie case of retaliation, the employer takes the burden of offering a nonretaliatory reason for its actions. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 (5th Cir. 1995). As with the *McDonnell Douglas* burden shifting system, if the employer proffers a legitimate excuse, the burden shifts back to the plaintiff to prove pretext. *Alexander v. Gerhardt Enterprises*, *Inc.*, 40 F.3d 187, 195 (7th Cir. 1994). This burden requires more than demonstrating that poor decisions were made; the question is not whether the employer made an erroneous decision, rather, it is whether the decision was unlawfully discriminatory. *Perez v. Region 20 Educ. Service Center*, 307 F.3d 318 (5th Cir. 2002).

A retaliation claim is independent from an underlying race discrimination claim. Thus, a plaintiff may be successful with the former even if unsuccessful with the latter.

42 U.S.C. § 2000e-3(a), Title VII's anti-retaliation statute, protects against retaliation for opposing not only practices that are actually unlawful under Title VII, but also practices that the employee reasonably believed were unlawful, even if incorrect. *Payne v. McLemore's Wholesale*

11

*& Retail Stores*, 654 F.2d 1130, 1140-1141 (5th Cir. 1981).

The dispositive issue with respect to Davis's retaliation claim is whether it was objectively reasonable for her to conclude that Title VII was violated when Davis heard from someone else that her subordinate co-worker called her a "black bitch" such that Davis's complaint to her employer's legal department about the comment was protected by Title VII's anti-retaliation provision. In other words, the question is whether Davis can establish that she engaged in protected activity when she complained to her employer's legal department about an alleged racial slur that she did not personally hear but was told of by another coworker, thereby rendering unlawful under Title VII the defendant's decision to terminate Davis for filing false accusations after the investigation proved the allegation of a racial slur unsubstantiated.

In deciding upon this reasonableness issue, the court is mandated to view the facts in a peculiar way: On one hand, the court must view the facts regarding the retaliation claim in a light most favorable to the plaintiff because the issue is before the court upon the defendant's motion for summary judgment; on the other hand, the court must view the facts in a light most favorably to the defendant because the issue is also before the court upon the plaintiff's motion for partial summary judgment. Thus, logic apparently dictates in this instance that the court must give both the plaintiff and the defendant the benefit of doubt in deciding upon whether Davis was reasonable to think a racial comment she was told was made against her by a subordinate co-worker violated Title VII.

To assist in answering these questions, the court looks to the Eleventh Circuit Court of Appeals's decision in *Little v. United Technologies, Carrier Transicold Division*, 103 F.3d 956 (11th Cir. 1997). The plaintiff in *Little* was a white male who was transferred to a new department

wherein another white employee approached the plaintiff and stated: "Nobody runs this team but a bunch of niggers and I'm going to get rid of them." Little did not report the remark until eight months later while at a team meeting at which the co-worker who had made the comment was present. Little argued that he was continually harassed from that point onward for having complained about the comment. He alleged he was under constant surveillance from his supervisors, subjected to closer scrutiny and criticism, and occasionally given menial tasks to perform. In his lawsuit, Little alleged that his employer discriminated against him because of his opposition to the tolerance of racial slurs at the company in violation of title VII.

The Eleventh Circuit Court of Appeals concluded "that Little has failed to establish the first element of his prima facie case alleging retaliatory discrimination; that is, he has failed to show that he engaged in a statutorily protected activity." 103 F.3d at 959. The court went on to cite with approval the Ninth Circuit Court of Appeals's decision in *Silver v. KCA, Inc.*, 586 F.2d 138 (9th Cir. 1978) which held that "the expression of opposition to a single comment by one co-worker to another [cannot] constitute opposition to an unlawful employment practice as a matter of law." 103 F.3d at 959 (citing *Silver*, 586 F.2d at 141). In agreeing with the result in *Silver*, the Eleventh Circuit Court of Appeals also wrote that "[b]y the terms of the [retaliation] statute ... not every act by an employee in opposition to racial discrimination is protected. The opposition must be directed at an unlawful employment practice of an *employer*, not an act of discrimination by a *private individual*." *Id*. (emphasis added).

In *Little*, the court wrote that "Little's opposition to the racial remark uttered by ... a co-worker is protected conduct within the parameters of the [retaliation] statute only if [the co-worker's] conduct can be attributed to [the employer]" which the court concluded it could not.

103 F.3d at 959-960.

The court in *Little* recognized, citing the Fifth Circuit's decision in *Payne, supra*, that "a plaintiff can establish a prima facie case of retaliation under the opposition clause of Title VII if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Id.* at 960. However, the court instructed that:

> It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented. It thus was not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Id.* (emphasis in original). Ultimately, the court in *Little* concluded that in light of the facts in that case, "Little's assertion that he reasonably believed [the co-worker's] comment to be a violation of Title VII by [their employer] was implausible at best." *Id*.

The precise question at hand seems to be one of first impression in the Fifth Circuit and this court believes that the Eleventh Circuit's decision in *Little* is the correct approach.

After balancing the appropriate standards regarding the motions for summary judgment by the plaintiff and defendant, the court concludes that there is no *genuine* issue of material fact necessitating a trial on Davis's retaliation claim. Rational jurors could not conclude that Davis was objectively reasonable to assume that the defendant employer violated Title VII when Davis was told by another co-worker that a subordinate co-worker called Davis a "black bitch." Thus the defendant's termination of Davis for levying what it determined after investigation to be a false accusation, combined with at least two prior instances of unfounded complaints, cannot be

said to be violative of Title VII's anti-retaliation statute.

### III. CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment [31-1] should be granted, whereas Plaintiff's Motion for Partial Summary Judgment [35-1] should be denied. Accordingly, and Order shall issue forthwith,

**THIS DAY** of August 8, 2005.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE